IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY – FRANKFORT DIVISION

| | | |
|---|---|---|
| **SHERRY MCLAUGHLIN,** in her individual capacity and as guardian of A.M., a minor | : : : | Case No. 3:25-cv-00041 |
| Plaintiffs | : | |
| v. | : | |
| **WILSON CLAY "CASEY" JAYNES**, *et. al.* in his individual and official capacity | : : | |
| Defendants | : : | |

### DECLARATION OF CHRISTOPHER WIEST

Pursuant to 28 U.S.C. §1746, the undersigned, Christopher Wiest, makes the following declaration, under penalty of perjury under the laws of the United States of America, that the facts contained herein are true and correct to the best of my knowledge and belief and that such facts are made based on my personal knowledge:

1. My name is Christopher Wiest, and I am one of the Counsel for the Plaintiff in the above captioned matter.

2. Attached as **Exhibit 1** are communications I had with Defense Counsel prior to their filing of the requested gag order motion. As I communicated with her, Plaintiffs and Counsel agreed to keep any disclosures to the media or public consistent with those permitted by SCR 3.130(3.6),[1] to abide any confidentiality/protective orders entered in this case, and to not disclose the names of any minors involved in the underlying

---

[1] Those limitations permit some discussion of cases. And to that end, the United States Department of Justice complies with those limitations when it issues press releases over charging decisions. See, e.g., https://www.justice.gov/usao-edky/pr/justice-department-announces-results-operation-restore-justice-more-205-alleged-child ; https://www.justice.gov/usao-edky/pr/lee-county-man-indicted-and-detained-armed-drug-trafficking

1

issues. She was plainly not satisfied with those agreements, and wanted a generalized, broad, one-sided gag order.

3. That is particularly troubling, because her own client, Defendant Marty Jaynes, sent an all-staff email following the filing of this suit as follows:



4. Since then, Mr. Jaynes has made other posts alluding to this matter, including the following on September 3, 2025:



5. I have been informed by members of the press that my law firm's filings in the Eastern and Western Districts of Kentucky, as well as the Southern District of Ohio, are generally followed by the media, including the Lexington Herald-Leader, the Louisville Courier Journal, the Cincinnati Enquirer, Fox19 news in Cincinnati, WCPO TV in Cincinnati, WDRB TV in Louisville, and WHAS 11 in Louisville.

6. I know that not only because reporters have told me as much, but also because I am frequently contacted after I file a new lawsuit by those reporters asking for comment.

7. Occasionally, I will issue a press release in connection with the filing of a lawsuit, but I did not do so with respect to the above captioned matter. Occasionally, I will issue a press release in connection with a major occurrence in a lawsuit that has garnered media attention, but, again, I did not do so here.

8. Rather, Jolene Almendarez, a reporter with the Cincinnati Enquirer, contacted my law firm after the filing of the above captioned lawsuit. My associate attorney, TJ Roberts, who was primarily involved in the investigation of this matter, handled the Enquirer request for comment, and answered questions by Ms. Almendarez about the allegations in the Verified Complaint.

9. In terms of the Courier-Journal article, my understanding is that the Courier and Enquirer share common ownership, and thus the Courier used (or copied), the article from the Enquirer as its source material.

10. Mr. Roberts' comments to the Cincinnati Enquirer were consistent with his description of the allegations of the Complaint.

11. His statements were also consistent with SCR 3.130(3.6), because (i) it has no substantial likelihood of materially prejudicing an adjudicative proceeding, as that term has been construed in both rule commentary and in court decisions construing that rule; (ii) it is fits squarely within SCR 3.130(3.6)(b)(1) because it was a statement of "the claim, offense or defense involved;" (iii) it fits squarely with SCR 3.130(3.6)(b)(2) because it is "information contained in a public record," and (iv) it fits within SCR 3.130(3.6)(b)(6) because it is "a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest," in that there

|   |   |
|---|---|
|   | is ongoing abuse being directed to young female students at the Carroll County Middle School that Defendants have decided to ignore (if not arguably encourage). |
| 12. | I myself disseminated the Cincinnati Enquirer article by sharing it on my personal Facebook page, with a comment that the complaint was verified and therefore substantiated with evidence, and my belief that the occurrences within the complaint occurred. The sharing of the article on Facebook, and the comment about the complaint being verified are plainly all public information well within SCR 3.130(3.6)(b)(1) and SCR 3.130(3.6)(b)(2). The commentary about the events in the verified complaint on my social media, as actually occurring also are consistent with evidence, and thus also consistent with SCR 3.130(3.6)(b)(6) because it is "a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest," in that there is ongoing abuse being directed to young female students at the Carroll County Middle School that Defendants have decided to ignore (if not arguably encouraging the same). |
| 13. | We are well apprised with SCR 3.130(3.6) and its commentary, and adhere to its limitations. We are aware that we are free to discuss with the press the contents of any filed document or public record (see SCR 3.130(3.6)(b)(1) and SCR 3.130(3.6)(b)(2)). We are aware that the commentary provides that there is greater leeway in a civil matter versus a criminal matter. And we are aware that the "substantial prejudice" prong of the rule looks at things such as the imminence of a jury trial. |

14. In my experience I know that at present, we are at least a year away from a jury trial. In fact, no such trial has been scheduled. We are far more cautious with any sort of press commentary about any case we handle (other than confirming, for instance, procedural steps, such as a trial date), as a trial date approaches.

15. One of the concerns I have with Defendants' request, is that their misconduct continues; that is, we have an underage ten-year-old who is being subject to serious abuse and harassment, which Defendants are still not addressing. It is my opinion that Defendants' request is primarily designed not to ensure any sort of fair trial, but to prevent ongoing reporting of abuse that continues to be inflicted on A.M.

Pursuant to 28 U.S.C. §1746, I declare under penalties of perjury under the laws of the United States of America that the foregoing Declaration is true and correct to the best of my knowledge and belief and that such facts are made based on my personal knowledge.

Executed on September 18, 2025.

_____
Christopher Wiest

| | |
|---|---|
| **From:** | chris@cwiestlaw.com |
| **To:** | "Lindsay Porter" |
| **Cc:** | "Michael A. Owsley"; "Jake Thompson"; "Theresa Wells"; "Thomas B. Bruns"; "Zachary Gottesman"; "tj@cwiestlaw.com" |
| **Subject:** | RE: McLaughlin et al v. Carroll BOE et al; 3:25-cv-00041-GFVT |
| **Date:** | Thursday, August 28, 2025 4:23:00 PM |
| **Attachments:** | image001.png |

Lindsay:

1. Tom Bruns entered his appearance on 8/19 and Zach entered his appearance on 8/25;

2. To be clear, I wasn't referring below to the initial incident in January/February – I am referring to the incident on 8/22/25, at the school, where T.H. and later K.A. (I'm happy to give the full name of the perpetrators, but have not done so because I suspect this email will be an exhibit and I think you know who they are already), <u>again</u> approached and accosted A.M. and threatened her, which was followed by another incident on 8/26/25 when A.M. was accosted and threatened by a friend of T.H.'s in school (B.K.), where he threatened A.M. with bodily harm (telling her she is going to "get hurt"), which caused an anxiety attack and an emergency therapist appointment (which resolved the panic attack).  The police were called in response to the 8/22/25 incident.  Though the term "accosting" was used by me in accordance with its ordinary definition meaning "approach and address (someone) boldly or aggressively."  The suggestion that my client (or we) cannot address ongoing harm and threatened harm, to A.M. (or others) through your clients' action and inaction is troubling.  I understand your clients, who are public employees, desire to avoid public scrutiny or accountability (which is why we are here to begin with), but there is an entire line of First Amendment cases about prior-restraint that create serious problems to what you are proposing.

3. I find your being troubled by Sherry's social media, of the term "unhinged," which is defined as "distraught" following threats of bodily harm to A.M. at school followed by an anxiety attack that resulted in therapist treatment, to be particularly tone deaf, as you seem far more interested in censoring speech, versus alleviating threats of bodily harm, ongoing sexual harassment, witness intimidation, and harassment of my client, which apparently your clients are more than happy to at least permit, if not encourage.

4. You also take issue with the bulk of media reporting about this case, but surely you are not suggesting gagging the media from covering this matter.

5. Obviously, when you use the term "unsubstantiated," I take that to mean that you have not reviewed the hundreds of emails that we have, nor have you undertaken a close review of the video that we have.  Said another way, you keep that using that term, but I do not think you know what it means.

6. You apparently take issue with calls by the public for accountability of your clients because of the egregiousness involved in what has been done to my clients to date at the hands of your clients. You don't expect that to stop, do you, when summary judgment is denied and this is aired in trial with a finding by a jury in our favor, right?

7. You may wish to do some research on the First Amendment, before you file a motion that runs headlong into it, in a case involving serious allegations of misconduct that involves significant public interest. Indeed, part of the beef you have is with media coverage of this matter. But you cannot keep confidential pleadings in the case, and you do not suggest doing so.

8. While I think we could probably address parameters of a protective order in terms of media or social media that involves protection of minor children names (we would agree to that), or to materials that are designated confidential in discovery, we are not going to agree to an ongoing gag order, particularly where the incidents continue and A.M. continues to be harassed and threatened in school. And of course, we would readily agree to the parameters of SCR 3.130(3.6)**.** As an aside, I am unaware of any instance, where we have identified a minor child by name or otherwise. We do not intend to do so (although I say that without knowing if the Court may require us to do so at trial).

9. If you feel like the answer is to file a motion to try to gag us or our client (a habit, in the context of this case is particularly troubling and in my view appears to involve additional First Amendment retaliation), versus address the ongoing misconduct by your clients, feel free to file the motion. In turn, I suppose we can look at preliminary injunctive relief to address our concerns about your clients' ongoing inaction and tacit approval of ongoing harassment and threats towards A.M.

Sincerely,


Christopher Wiest
Chris Wiest, Attorney at Law, PLLC
50 E. Rivercenter Blvd, Ste. 1280
Covington, KY 41011
513-257-1895
chris@cwiestlaw.com

**From:** Lindsay Porter <lporter@elpolaw.com>
**Sent:** Thursday, August 28, 2025 3:24 PM
**To:** chris@cwiestlaw.com; tj@cwiestlaw.com
**Cc:** Michael A. Owsley <mowsley@elpolaw.com>; 'Jake Thompson' <jthompson@cbkylaw.com>; Theresa Wells <twells@elpolaw.com>
**Subject:** RE: McLaughlin et al v. Carroll BOE et al; 3:25-cv-00041-GFVT

Chris:

The only attorneys listed on the complaint are you and TJ. When another attorney enters their appearance – we will include them in our communications.

It is my understanding that the meaning of the word "accost" means to approach and address someone boldly or aggressively. Importantly, your client admits to law enforcement that TH never approached her at school, and she did not hear him call her any names or make any threats. A review of the video footage from the school clearly indicates the two never made contact with one another – therefore, I believe you've used the term "accost" incorrectly.

Here are our concerns:

1. Plaintiffs and Plaintiffs' counsel appear to be engaging in conduct that threatens to unduly influence the potential jury pool and intimidate witnesses by disseminating false and misleading information about this case to the media and making or causing statements to be made on social media platforms.

2. On August 19, 2021, the School Defendants received a request for comment from The Enquirer in Cincinnati. The requesting reporter specifically requests that "someone from the school district or board" to address the issues for his story. This request challenges the defense to litigate this matter in the press.

3. On August 21, 2025, the Cincinnati Enquirer and the Courier Journal published articles regarding the lawsuit, both of which have over 100 shares on social media platforms. The articles are unnecessarily smearing the School Defendants with inflammatory statements which lack proof and serve no more than to harass and oppress the School Defendants.

4. Both The Enquirer and The Courier Journal articles provide comment from Plaintiffs' attorney, TJ Roberts. The Courier Journal article states that "[a]s far

as Roberts knows, the male student never faced consequences at school or from the local police department." Roberts states directly, without corroborating evidence of same, "[t]his individual engaged in misconduct with total impunity." Roberts is speaking of a minor child – and publicizing damning comments towards this minor child for the entire community to decide this case without a scintilla of supporting evidence other than your clients' word. The School Defendants are concerned that without a protective order, each and every minor child involved in this case – and there are numerous – are at risk of having both their privacy and safety violated.

5. In addition, after the release of the aforementioned articles and social media campaign, the School Defendants are individually receiving threatening messages from community members calling for them to be fired among other things – when not a single element of your case has been proven.

6. Also on August 21, 2025, you shared the Courier Journal article and posted the following to your Facebook page:

    This is a verified complaint – it happened – we reviewed the video, got the public records, and have the receipts. Instead of addressing the bullying and threats of sexual assault on a 10 year old girl, the Carroll County Superintendent went after the mom and retaliated against her for not backing down.

    I look forward to putting this one in front of a federal jury.

    Article in comments.

7. Just because a complaint is verified does not make it true. Each and every one of Plaintiffs' claims must be proven. Unfortunately, your comments pose a threat to the judicial process of this case. Disappointing.

8. Most recently, on August 26, 2025, Sherry McLaughlin posted what the School Defendants perceive as a direct threat:

    I don't know how far you people think you can push my little girl, or allow her to be pushed, until she became unhinged… but here we are. And it's on you… ALL of you.

Given the prevalence of violence in schools – the use of the word "unhinged" is not taken lightly by the School Defendants – and will not be tolerated.

9. On August 27, 2025, a community member commented on a post regarding the matter as follows:

> These are the type of situations where people should be taking action if its proven. DEMAND justice. Pick a time, surround the school and protest. Hinder the school from operating due to congestion. The state is not gonna [sic] mobilize to arrest the entire community and federal government is busy with all their issues. If we the people do not protect the children nobody will. Its [sic] a proven fact that the higher you go in society, politics and even a lot of churches there is no protection for children. They are not protected and are often sexualized/molested/trafficked. Society is reaching a point that in many heads dogs receive more protection than children.

Again, in consideration of the recent events in Minneapolis involving yet another case of violence directed towards a school, in which two children are now dead and 17 individuals are injured, the School Defendants are extremely alarmed by the calls for vigilante justice in the community based on misinformation in the media. A Protective Order is necessary to protect the safety of all involved.

We are asking for a protective order prohibiting Plaintiffs and Plaintiffs' counsel from submitting information to the media regarding this case, and further prohibiting same from making media statements or utilizing social media platforms for campaigns of support regarding this case or soliciting / approving these activities by third parties as we believe this is necessary to preserve the fairness of the trial, protect potential jurors from undue influence, and prevent the intimidation of parties and witnesses.

Please advise as to whether you would agree. Otherwise, we will be filing a motion with our Answer.

Thanks!

**Lindsay Tate Porter**
**Associate Attorney**
**English, Lucas, Priest & Owsley, LLP**
1101 College Street; P.O. Box 770
Bowling Green, KY 42102-0770

Phone | 270-781-6500     Fax | 270-782-7782
Web | www.elpolaw.com  E-Mail | lporter@elpolaw.com



Connect on Facebook with ELPO here: www.facebook.com/ELPOLaw
Follow us on Twitter here: www.twitter.com/ELPOLaw

NOTICE: This e-mail and any attachments to it may be privileged or confidential. If this e-mail was sent to you in error, please notify me immediately by return e-mail or by phone at 270-781-6500 (collect), and please do not use, forward, disseminate, retain, print or copy this e-mail or any attachments.

---

**From:** chris@cwiestlaw.com <chris@cwiestlaw.com>
**Sent:** Thursday, August 28, 2025 1:49 PM
**To:** Lindsay Porter <lporter@elpolaw.com>
**Cc:** Michael A. Owsley <mowsley@elpolaw.com>; 'Jake Thompson' <jthompson@cbkylaw.com>; Theresa Wells <twells@elpolaw.com>; 'Thomas B. Bruns' <tbruns@bcvalaw.com>; 'Zachary Gottesman' <zg@zgottesmanlaw.com>; tj@cwiestlaw.com
**Subject:** RE: McLaughlin et al v. Carroll BOE et al; 3:25-cv-00041-GFVT

Lindsay,

In the future, please ensure that you copy all of my co-counsel, who are copied on this email.

As part of the meet and confer process, please let us know what concerns you are trying to address in connection with your request for a gag order.

I wanted to let you know that we would abide by (as we are required to), SCR 3.130(3.6), and the entry of a standard protective order in connection with discovery of this case to keep confidential materials that are appropriately designated confidential (and of course would never disclose such materials except as provided for in such a protective order).

I should let you know that we remain extraordinarily concerned about ongoing sexual harassment and threatened sexual assault of our client's minor daughter (which, as it turns out, escalated in an additional complaint to the school and law enforcement because the minor in question decided to accost our client's daughter in the school following the filing of the lawsuit).

As you address your concerns that are driving this request, please address the communication that Mr. Jaynes sent to the entirety of the employees of the district following the filing of the suit.

I will be able to address the substance of the request, once you inform me what you are concerned about.

Sincerely,

Christopher Wiest
Chris Wiest, Attorney at Law, PLLC
50 E. Rivercenter Blvd, Ste. 1280
Covington, KY 41011
513-257-1895
chris@cwiestlaw.com

---

**From:** Lindsay Porter <lporter@elpolaw.com>
**Sent:** Thursday, August 28, 2025 11:12 AM
**To:** chris@cwiestlaw.com; tj@cwiestlaw.com
**Cc:** Michael A. Owsley <mowsley@elpolaw.com>; Jake Thompson <jthompson@cbkylaw.com>; Theresa Wells <twells@elpolaw.com>
**Subject:** McLaughlin et al v. Carroll BOE et al; 3:25-cv-00041-GFVT

Chris and TJ:

Our firm will be representing the Defendants, Jaynes, McIntyre, Stevens, Stephenson, and the Board of Education of Carroll County, Kentucky in the above referenced matter. I am reaching out pursuant to LR 37.1 in an effort to meet and confer regarding a proposed entry of a protective order regarding the media and social media in this case as it involves minor children who are each entitled to a certain level of privacy and protection. Additionally, we are concerned about this case being tried in the media and the potential jury pool being tainted with misinformation and confusion of the issues. Accordingly, we are requesting that you and your client agree not to make social media posts about this case, or that reference, specifically or impliedly, any of the Defendants in this case, and that you and your client agree not to discuss this case or any of the Defendants with any traditional media sources, including discussing same with reporters.

We look forward to working with you on this case. Please advise if you and your client agree to this request.

**Lindsay Tate Porter**
**Associate Attorney**
**English, Lucas, Priest & Owsley, LLP**
1101 College Street; P.O. Box 770
Bowling Green, KY 42102-0770

Phone | 270-781-6500    Fax | 270-782-7782
Web | www.elpolaw.com   E-Mail | lporter@elpolaw.com



Connect on Facebook with ELPO here: www.facebook.com/ELPOLaw
Follow us on Twitter here: www.twitter.com/ELPOLaw

NOTICE: This e-mail and any attachments to it may be privileged or confidential. If this e-mail was sent to you in error, please notify me immediately by return e-mail or by phone at 270-781-6500 (collect), and please do not use, forward, disseminate, retain, print or copy this e-mail or any attachments.