# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY – FRANKFORT DIVISION

| | |
|---|---|
| **SHERRY MCLAUGHLIN,** in her individual capacity and as guardian of A.M., a minor | Case No. 3:25-cv-00041 |
| Plaintiffs | |
| v. | |
| **WILSON CLAY "CASEY" JAYNES,** *et. al.* : *in his individual and official capacity* | |
| Defendants | |

## DECLARATION OF SHERRY MCLAUGHLIN

Pursuant to 28 U.S.C. §1746, the undersigned, Christopher Wiest, makes the following declaration, under penalty of perjury under the laws of the United States of America, that the facts contained herein are true and correct to the best of my knowledge and belief and that such facts are made based on my personal knowledge:

1. My name is Sherry McLaughlin, and I am a Plaintiff in the above-captioned matter.

2. My daughter is A.M., who is the other plaintiff in the above-captioned matter after T.H., a student at Carroll County Middle School ("CCMS"), sexually harassed and threatened to rape her.

3. On August 14, 2025, we filed suit against Defendants for First Amendment Retaliation, Title IX violations, Fourteenth Amendment violations, and Title IX retaliation.

4. The sexual harassment, rape threats, inaction of the Defendants, and retaliation A.M. and I have experienced by the Defendants has had a significant negative impact on my and A.M.'s physical and mental health. At the time of the filing of suit, we have both lost weight, struggled to keep food down, and have suffered mental health issues requiring psychiatric intervention.

5. Since filing suit, I have not contacted the media about this lawsuit, spoken to the media about this lawsuit, nor do I intend to.

6. I further have not made any public statements about the substance of this lawsuit, but have only shared a post created by one of my attorneys, Chris Wiest.

7. I have not threatened anyone nor do I intend to.

8. Since filing suit, A.M. has been subject to ongoing retaliation at the school.

9. Specifically, T.H. has continuously disparaged A.M., calling her a liar, a "whorebag," a "whore," and a "hoe."

10. On August 22nd, 2025, T.H. and K.A., students at CCMS, accosted A.M., wherein K.A. threatened A.M. by claiming he and his friends were going to jump her, and use physical violence against her in retaliation for the lawsuit arising out of Defendants' failure to defend A.M. from T.H.'s unwanted advances, rape threats, and coordination of "fucking and raping" other girls through a group chat called "Diddy Party."

11. T.H. further communicated the fact that his friends, including K.A., were going to jump and "beat up" A.M. to multiple students (including L.S.), who communicated these threats to A.M.

12. T.H.'s course of intentional conduct (which included direct, true threats of violence) were directed at A.M., were intended to seriously disturb, harass, and intimidate A.M., actually seriously disturbed, harassed, and intimidated A.M., and served no legitimate purpose.

13. A.M. went to the school office to report this incident, and I picked her up and took her home from school, due to the severity, pervasiveness, and objective offensiveness of the remarks and threats made by T.H. and K.A., that A.M. was emotionally and mentally

unable to feel safe at school to the point that she was not afforded access to educational opportunity.

14. I decided to check A.M. out of the school after talking with her in a private room, where she explained what happened to me,

15. When we left the school, I went to the Carroll County Police Department, and Darrius Taylor interviewed A.M., who then went to the school to question the students.

16. Darrius Taylor informed me that what happened was corroborated. T.H. admitted to calling A.M. a whore and a how and to communicating K.A.'s intention to jump and beat up A.M. with his friends to other students, that L.S. admitted to directly hearing K.A. threaten to beat up A.M. with his friends in retaliation for this lawsuit. Darrius Taylor also informed me that he will be reporting this incident to the Carroll County Attorney for possible charges, including intimidation of a witness to a legal proceeding, stalking, and terroristic threatening, but emphasized that the decision to charge rests entirely with the County Attorney.

17. T.H., upon information and belief, was assigned to do his school work in the vice principal's office for one day as a result of this incident.

18. K.A. and his friends, upon information and belief, have faced no consequences, continuing CCMS's pattern and practice of looking over, if not encouraging, the threats A.M. faces, and creating a pattern of ongoing harassment against A.M.

19. I have further filed a Title IX complaint in light of this incident with the school board, and it remains pending.

20. T.H., upon information and belief, continues to retaliate against A.M., and the school district has done nothing to address it. T.H. communicates to students that A.M. is a liar, a

hoe, and a whore, and students continuously accost A.M. with those sexually harassing communications.

21. Included in this retaliation, and after August 22, 2025 when Darrius Taylor told T.H. that A.M. is a witness to a legal proceeding and that his harassment and stalking campaign against her needs to end, T.H. began telling other students, including students close to A.M., that A.M. threatened to rape him at the January 30, 2025 school dance, resulting in even more harassment against A.M.

22. To date, the school has done nothing to address this conduct, if not encourage it.

23. The ongoing harassment and the failure of CCMS to address it has resulted in A.M.'s mental and physical health to decline. After the January 30, 2025 incident with T.H., A.M. began seeing a psychiatrist approximately once every two weeks. She now sees a psychiatrist approximately twice per week now in light of the ongoing retaliation effort that CCMS has failed to address, if not encouraged.

24. Further, A.M., has begun struggling to use the bathroom. I took A.M. to a physician to address this. The physician, after examining A.M., informed me that she has no disease causing these physical symptoms, but it is all tied to stress, anxiety, and trauma, all arising from the January 30, 2025 incident, and the ongoing harassment she faces at the school.

25. Currently, the physician and psychiatrist are trying to address and treat A.M. without the use of drugs, but have informed me she will likely have to be put on medications in the event that treatment does not improve her mental health.

26. On or about August 26, 2025, B.K., a friend of T.H., accosted and threatened A.M. with bodily harm, calling her a liar and saying she will "get hurt" because she told the school about what T.H. did to her.

27. This caused an immediate and severe anxiety attack in A.M., requiring immediate psychiatric intervention.

28. Frustrated with the ongoing harassment and retaliation my daughter faces, I posted on Facebook, that same day: "I don't know how far you people think you can push my little girl, or allow her to be pushed, until she became unhinged... but here we are. And it's on you.. ALL of you."

29. This post is not a threat of violence. This post was expressing the reality that my daughter has, on multiple occasions, been unable to focus at class and receive the education she is legally entitled to as a result of the constant harassment, intimidation, and retaliation she has been subjected to since she spoke up about the rape threats she experienced in January. The post also makes clear that it is my opinion that the school has failed, and continues to fail, to protect my daughter from this misconduct, further retaliating against me and A.M. for invoking our rights. My understanding of the word "unhinge" is "to make someone mentally unbalanced," which is exactly what T.H., K.A., B.K., and their friends have done by constantly sexually harassing my 11-year old daughter. And the school system has, in further retaliation against me and A.M., taken no action to address these actions against her since we filed suit on August 14, 2025.

30. On August 29, 2025, A.M. further noticed Defendant Casey Jaynes following A.M. in the hallways of CCMS throughout the school day. Prior to this incident, A.M. hardly noticed Jaynes at the school, let alone following her. Upon information and belief, this is not part of Jaynes's job, but was rather a tactic to further attempt to bully and intimidate A.M. into silence about what happened to her.

31. On August 29, 2025, A.M. was accosted at a CCMS football game where she is on the cheerleading team, where two classmates, and friends of T.H., called her a crybaby for reporting what T.H. had done to her. Again, the school has taken no action to address this misconduct.

32. Further, on September 9, 2025, Casey Jaynes attended A.M.'s cheer practice. Prior to this, A.M. had never seen Jaynes at the practice.

33. Further, on September 17, 2025, more than seven weeks after the start of the school year, T.H. was placed in gym class with A.M. by Carroll County Schools. A.M.'s reaction to T.H.'s presence was an immediate and severe anxiety attack. She called me and informed me about what happened, so I went to the school to check her out of school.

34. The school never offered to take T.H. out of the classroom with A.M., but rather, Mr. Ryan Laswell – the gym teacher – tried to put A.M. in Defendant McIntyre's office.

35. While I was on the way to the school, I spoke with Mr. Laswell, and he informed me that he was never told that T.H. and A.M. should not be in the same classroom.

36. When I arrived, an employee of Carroll County Schools mocked me when I told her I was here to check A.M. out of school.

37. Upon arriving home with A.M., I have also scheduled an emergency meeting with A.M.'s psychiatrist as a result of this incident.

38. A.M. is afraid to go to school because of the ongoing harassment and retaliation campaign, and is afraid to report incidents, because she worries that the school will retaliate against her and me like they did when she reported the January 30, 2025 incident.

Pursuant to 28 U.S.C. §1746, I declare under penalties of perjury under the laws of the United States of America that the foregoing Declaration is true and correct to the best of my knowledge and belief and that such facts are made based on my personal knowledge.

Executed on September 18, 2025.

*Sherry L. McLaughlin*

Sherry McLaughlin