UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION
CIVIL ACTION NO. 3:25-cv-00041-GFVT
*(ELECTRONICALLY FILED)*

SHERRY MCLAUGHLIN, in her individual
Capacity and as guardian of A.M., a minor                      PLAINTIFFS

v.

WILSON CLAY "CASEY" JAYNES, et al.                             DEFENDANTS

---

**REPLY TO PLAINTIFFS' MOTION IN OPPOSITION TO
DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

---

The Defendants, Wilson Clay "Casey Jaynes ("Superintendent Jaynes"), Brandi McIntyre ("McIntyre"), Jenna Stevens ("Stevens"), Robin Stephenson ("Stephenson"), and the Board of Education of Carroll County, Kentucky ("Board") (collectively referred to as the "School Defendants"), by and through counsel, for their Reply to Plaintiffs' Motion in Opposition to Defendants' Motion for Protective Order,[1] state as follows in support of their Motion:

**INTRODUCTION**

Plaintiffs argue that the School Defendants' Motion for Protective Order infringes upon the First Amendment.[2] Plaintiffs contend prohibiting them and their counsel from submitting information to the media and making statements on social media regarding this case is

---

[1] While Plaintiffs styled their filing as a Motion in Opposition to Defendants' Motion for Protective Order, the School Defendants are treating same as a Response to their Motion for Protective Order.
[2] Contrary to opposing counsel's contention, the undersigned both understands and respects the First Amendment.

1

tantamount to an effort to "gag" them from discussing non-confidential information about a matter of alleged public concern, and that there is no judicial interference with regard to the potential jury pool as the trial date has not been set by the Court. Yet, Plaintiffs seemingly ignore the fact that the School Defendants' request for a Protective Order is sought simply to protect the number of minor children involved/implicated in this case – including the minor child Plaintiff – which the School Defendants assert is sufficient good cause for this Court to use its broad discretion afforded by Fed. R. Civ. P. 26 to issue a protective order protecting said minor students' rights to privacy, safety, and confidentiality.

## ARGUMENT

Fed. R. Civ. P. 26(c) grants broad discretion to trial judges in fashioning protective orders when justice so requires to protect a party from annoyance, oppression, or undue burden or expense. *York v. Am. Med. Sys., Inc.*, No. 97-4306, (6th Cir. 1998), citing *In re Eli Lilly & Co.*, 142 F.R.D. 454, 456 (S.D. Ind. 1992); *Galaviz-Zamora v. Brady Farms, Inc.*, 230 F.R.D. 499, 501 (W.D. Mich. 2005). This Court, in its sound discretion, is authorized by Rule 26(c) to "fashion a set of limitations that allows as much relevant material to be discovered as possible, while preventing unnecessary intrusions into the legitimate interests - including privacy and other confidentiality interests - that might be harmed by the release of the material sought." *Id*; *see also Reed v. Pramstaller,* No. 06-CV-10934, (E.D. Mich. Dec. 27, 2007). In the case at bar, the issue is not with regard to limiting discovery; however,

> [t]he critical question that this case presents is whether a litigant's freedom comprehends the right to disseminate information that he has obtained pursuant to a court order that both granted him access to that information and placed restraints on the way in which the information might be used. In addressing that question it is necessary to consider whether the "practice in question [furthers] an important or substantial governmental interest

2

>unrelated to the suppression of expression" and whether "the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved."

*Procunier* v. *Martinez*, 416 U.S. 396, 413 (1974); *see Brown* v. *Glines*, 444 U.S. 348, 354-355 (1980); *Buckley* v. *Valeo*, 424 U.S. 1, 25 (1976); *see Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34 (1984). Rule 26(c) furthers a substantial governmental interest unrelated to the suppression of expression. *Procunier, supra*, at 413; *Seattle Times Co.*, *supra,* at 34.

Importantly, "an order prohibiting dissemination of discovered information before trial," as is the request here, "is not the kind of classic prior restraint that requires exacting First Amendment scrutiny." *See Gannett Co*. v. *DePasquale,* 443 U.S. 368, 399 (1979); *see also Seattle Times Co*., *supra,* at 34. The School Defendants understand that unlike information merely exchanged between the parties, '[t]he public has a strong interest in obtaining the information contained in the court record.'" *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1180 (6th Cir. 1983). "[T]he public is entitled to assess for itself the merits of judicial decisions," and, thus, "'[t]he public has an interest in ascertaining what evidence and records the District Court [has] relied upon in reaching [its] decisions.'" *Id*. However, the Seventh Circuit has held that "[s]ecrecy is fine at the discovery stage, before the material *enters* the judicial record," and as such, a district court may enter a protective order limiting the use or disclosure of discovery materials upon a mere showing of 'good cause.' Thus, a district court may enter a protective order limiting the use or disclosure of discovery materials upon a mere showing of "good cause[.]" Fed. R. Civ. P. 26(c)(1). *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)) (emphasis added).

3

For example, in *Fears v. Kasich (In re Ohio Execution Protocol Litig.)*, 845 F.3d 231, 233 (6th Cir. 2016), the Sixth Circuit Court of Appeals held that a protective order was properly imposed under Fed. R. Civ. P. 26(c), as there was 'good cause' for the order based on particularized harm to the drug manufacturers and Ohio's capability to perform executions – preventing disclosure of information that could reveal the identity of suppliers or manufacturers of Ohio's lethal injection drugs and of anyone related to carrying out executions in Ohio. *Fears v. Kasich (In re Ohio Execution Protocol Litig.)*, 845 F.3d 231, 233 (6th Cir. 2016). The court held that "[g]ood cause exists if 'specific prejudice or harm will result' from the absence of a protective order." *Id.* at 236 (quoting *Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop)*, 661 F.3d 417, 424 (9th Cir. 2011)).

Further, the United States Supreme Court has held that "there is an opportunity… for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes." Cf. *Herbert* v. *Lando*, 441 U.S. 153, 176-177 (1979); *Gumbel* v. *Pitkin*, 124 U.S. 131, 145-146 (1888). In *International Products Corp.* v. *Koons*, 325 F.2d 403, 407-408 (2d Cir. 1963), Judge Friendly opined that "[whether] or not the Rule itself authorizes [a particular protective order] . . . we have no question as to the court's jurisdiction to do this under the inherent 'equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices." (citing *Gumbel* v. *Pitkin, supra*); *Seattle Times Co.*, *supra,* at 35.

The Kentucky Supreme Court has determined access to court records may be denied to "keep the parties from using the court as a megaphone to amplify and give credence to scandalous and salacious allegations." *Roman Cath. Diocese of Lexington v. Noble*, 92 S.W.3d

4

724, 734 (Ky. 2002) (quoting *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978), *Nixon, supra* at 598). Accordingly, a court may deny access to its records and documents to "insure that its records are not used to gratify private spite[,] promote public scandal," or to "serve as reservoirs of libelous statements for press consumption," as is the very concern in the case at bar. *Id*. The Kentucky Supreme Court further found that "[d]enying access for these reasons goes to the integrity of the particular court in question and to the judicial system as a whole. These concerns remain independent of any out-of-court publication or dissemination of material that remains sealed in a court's record." *Id*.

Here, the School Defendants' request prohibiting Plaintiffs and their counsel from submitting information to the media and making statements on social media regarding this case is not rooted in suppression of speech but is intended to further the substantial government interest in protecting the particularized harm that could be done to the privacy, safety, and confidentiality rights of each of the minor children involved. The Sixth Circuit has held that when a case is brought on behalf of very young children, as is the case here, the court grants a 'heightened protection.' *Doe v. Porter*, 370 F.3d 558, 561 (6th Cir. 2004). Similarly, the Tenth Circuit has held that good cause was shown for issuance of a protective order where there was a "concern for the privacy and safety of the families of both victims and perpetrators and the safety of the general public were legitimate grounds for the Orders." *Otero v. Buslee,* 695 F.2d 1244, 1247 (10th Cir.1982); *see also Taylor v. Solvay Pharms., Inc*., 223 F.R.D. 544, 547 (D. Colo. 2004).[3]

---

[3] Several courts in the Sixth Circuit have interpreted Rule 26(c)(1) to allow parties to file motions for protective orders on behalf of non-parties as the rule specifically provides that a motion for protective order is available to "a party or any person from whom discovery is sought." Fed. R. Civ. P. 26(c)(1); *see Proto Gage, Inc. v. Fed. Ins. Co.*, No. 21-12286, (E.D. Mich. May 19, 2022); *see also B.P. v. City of Johnson City*, No. 2:23-CV-71-TRM-JEM, (E.D.

4903-8744-7147, v. 1

The School Defendants have already provided counsel for the Plaintiffs substantial records regarding this matter in response to his Open Records Request and even allowed them to view the video in question – which included dozens of minor children. Counsel for the Plaintiffs have taken that information (which has not yet been entered/admitted into the record in this case) and disseminated allegations relating to multiple minor children to the media, using that access to information. This matter includes sensitive allegations that a minor student engaged in an act that the minor student *denies* – and that other minor students participated in an investigation relative to same, none of which corroborate the minor Plaintiff's allegations. Publicizing disinformation regarding the specific facts of this case on social media and in news media outlets about the involved minor children – including the alleged perpetrator who denies the allegations – is detrimental to all involved parties and creates a legitimate safety concern. More specifically, Plaintiffs sued multiple parties and this case involves multiple minor children witnesses. Absent a Protective Order, the School Defendants cannot adequately protect these children if they are constantly fielding social media posts of the Plaintiffs and their counsel using this Court as a megaphone seeking to amplify their case and give credence to scandalous and salacious allegations at the expense of minor children.

Counsel for Plaintiffs are correct in stating that the trial in this case has not been scheduled and the evidence of record this Court will dispositively rely upon has not been entered into the record. An Order prohibiting dissemination of discovery materials *before trial*

---

Tenn. Nov. 18, 2024). For example, in *W.S. v. Daniels*, 258 F. Supp. 3d 640, 646 (D.S.C. 2017), the court held that the narrow Confidentiality Order entered regarding third-party children was proper. See *W.S. v. Daniels*, 258 F. Supp. 3d 640, 646 (D.S.C. 2017). Therefore, the School Defendants have proper standing to seek a protective order on behalf of all of the minor children implicated by the Plaintiffs' complaint.

6

4903-8744-7147, v. 1

does not require the same level of First Amendment scrutiny. *See Gannett Co.* v. *DePasquale,* 443 U.S. 368, 399 (1979). Accordingly, limiting disclosure of discovery materials at this juncture is appropriate as Plaintiffs and their counsel's posts and media involvement pose an unnecessary intrusion into the minor children's legitimate privacy, safety, and confidentiality interests – and good cause therefore exists.

Plaintiffs' counsel seems to compare an e-mail sent by Superintendent Jaynes to the employees of the District to their social media and news media involvement. This juxtaposition is flawed. Superintendent Jaynes' e-mail was appropriate and did not state anything unfounded. There is a marked difference in the leader of an entity sending a message to their employees and the Plaintiffs/Plaintiffs' counsel using social media and this Court as a megaphone – attacking minor children. Further, Superintendent Jaynes' Facebook post regarding the District's success was unrelated to the lawsuit in question (see Declaration of Superintendent Jaynes, attached hereto as Exhibit A).

With regard to the Declaration of Sherry McLaughlin, it is important to note that the School Defendants have no record of Plaintiff's alleged August 2025 Title IX complaint filed with the Board, as they never received a Title IX complaint from the Plaintiff (See Exhibit A, ¶ 7). Moreover, Superintendent Jaynes was not in the District on August 29, 2025, but instead, was in Shelbyville, Kentucky at Ohio Valley Educational Cooperative for a Superintendent's Retreat (See Exhibit A, ¶ 8). Therefore, it would be impossible for Superintendent Jaynes to have "follow[ed]" A.M. in the halls of CCMS throughout the school day. Additionally, on September 9, 2025, Superintendent Jaynes stayed late for a food pantry meeting (See Exhibit A, ¶ 9). Thereafter, he went to Carroll County High school for the girls' volleyball game (*Id.*).

7

On his way to the gym, Superintendent Jaynes noticed students in the cafeteria and as such, stopped to say hello (*Id*.). When he entered the cafeteria, he noticed it was the middle school cheerleaders and their coach (*Id*.). He engaged in conversation with the coach and left for the gym within two (2) minutes – as he would for any other team or club affiliated with the District (*Id*.). Contrary to Plaintiffs' contention, Superintendent Jaynes, nor any other District employee, are retaliating against them – and this false narrative is not taken lightly by the School Defendants (See Exhibit A, ¶ 10).

It is clearly problematic when an attorney posts to his personal Facebook page "[t]his is a verified complaint – it happened…" This isn't 'innocuous.' Plaintiffs' counsel did not merely state that the claims were substantiated with a verified complaint – he said *it happened* – essentially acting as a factfinder while infringing on the rights of multiple minor children – the Plaintiff, the alleged perpetrator, and each of the minor witnesses. Unless Plaintiffs' counsel intends to identify himself as a witness – this is improper. He was not there and as such, his conclusory statement is both harmful and offensive to all minor children involved. This is a specific example of Plaintiffs' counsel using court records and the media to gratify spite towards the District and promote public scandal in the Carroll County and surrounding communities.

Based on Plaintiffs' counsel's apparent pattern of conduct, the Protective Order prohibiting the Plaintiffs and Plaintiffs' counsel from submitting information to the media and making statements on social media regarding this case should be granted so that any future information provided during discovery, including initial disclosures, will not be used to further publicly disparage minor children. The School Defendants have a legitimate interest in protecting the privacy, safety, and confidentiality of all minor students involved in this case –

8

of which would be especially harmed if disinformation continues to be released – as it is damaging to the minor children's (and their families) reputation, safety, and privacy.

## CONCLUSION

WHEREFORE, the School Defendants respectfully request that this Court grant their Motion for a Protective Order and enter the proposed Protective Order tendered with the original Motion.

> ENGLISH, LUCAS, PRIEST & OWSLEY, LLP
> 1101 College Street, P.O. Box 770
> Bowling Green, KY 42102-0770
> Telephone: (270) 781-6500
> Facsimile: (270) 782-7782
> Email:  mowsley@elpolaw.com
>        lporter@elpolaw.com
>
> BY: /s/*Lindsay Tate Porter*
>     MICHAEL A. OWSLEY
>     LINDSAY TATE PORTER
>
> and
>
> JAKE A THOMPSON
> Crawford & Baxter, P.S.C.
> Attorneys At Law
> 523 Highland Avenue, P.O. Box 353
> Carrollton, Kentucky 41008
> JThompson@CBKYlaw.com
>
> *Attorneys for the School Defendants*

## CERTIFICATE OF SERVICE

 I hereby certify that on September 30, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send electronic notification to the following:

Christopher Wiest
Theodore J. Roberts
Chris Wiest, Attorney at Law, PLLC
50 E. Rivercenter Blvd., Ste. 1280
Covington, KY 41011
 *Counsel for Plaintiff*

Zachary Gottesman
Gottesman & Associates
404 E. 12th Street, First Floor
Cincinnati, OH 45202
 *Counsel for Plaintiff*

Thomas B. Bruns
Bruns, Connell, Vollmar & Armstrong, LLC
4555 Lake Forest Drive, Suite 330
Cincinnati, OH 45242
 *Counsel for Plaintiff*

            */s/* **_Lindsay Tate Porter_**
            LINDSAY TATE PORTER

4903-8744-7147, v. 1